IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **RONALD S. DEITCH,** | * | |
| Plaintiff, | * | |
| v. | * | Civ. No. DLB-24-1248 |
| **MEDSTAR MEDICAL GROUP,** **SOUTHERN MARYLAND LLC,** *et al.*, | * | |
| | * | |
| Defendants. | | |

**MEMORANDUM OPINION**

Ronald S. Deitch filed suit against Medstar Medical Group, Southern Maryland, LLC ("Medstar"); the St. Mary's County Sheriff's Department and Steven A. Hall, Sheriff (collectively, "the Sheriff"); and Habitat America, LLC ("Habitat"), Habitat's president, Cathy Murphy, and two of its employees, Brittany and Steffany Hardesty (collectively, "the Habitat defendants"). Deitch, who has multi system atrophy, alleges violations of his constitutional rights and his rights under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*; the Fair Housing Act of 1968, 42 U.S.C. § 3601 *et seq.*; and Maryland common law. The Habitat defendants move to dismiss the complaint. For the following reasons, the motion to dismiss is granted. The claims against the Habitat defendants are dismissed with prejudice.

**I.     Background**

The Court accepts the following well-pleaded factual allegations in the complaint as true.

Deitch is a disabled person who has multi system atrophy. ECF 1, ¶ 1. His condition causes, at least in part, "Parkinsonian shaking and tremors" and "chronic Vaso Vagal Syncope episodes," where he goes "catatonic for a period" or loses consciousness completely. *Id.* ¶ 11. Habitat is Deitch's former landlord at Indian Bridge Apartments, part of an affordable housing program for

disabled veterans offered through the St. Mary's County Department of Housing. *Id.* ¶¶ 14–15, 34. Cathy Murphy is Habitat's President, and Steffany and Brittany Hardesty are property-manager employees. *Id.* ¶¶ 5–8.

Between 2017 and 2021, Deitch wrote "numerous letters" to Habitat and complained to the St. Mary's County Department of Housing that his apartment's carpet was contaminated with the urine of a prior tenant's cat and needed to be replaced. *Id.* ¶ 15. The contamination caused Deitch to suffer from sinus infections. *Id.* Deitch alleges that, even after an inspector from the U.S. Housing and Urban Development Department "came and found the carpet to be contaminated," "Habitat's management offered to replace the carpet in the hall only." *Id.* Eventually, Deitch convinced Habitat to replace the carpet, and his sinus infections stopped. *Id.*

In 2019, Deitch was "held up at gunpoint in his apartment . . . for 12 hours." *Id.* ¶ 16. Deitch reported the crime to a Maryland State Police officer who filed a report with St. Mary's County, which included "pictures of his bruises and injuries," but the State's Attorney decided not to prosecute the assault. *Id.* Instead, after Deitch had a "heated argument" with an Assistant State's Attorney over the failure to investigate and prosecute, a Sheriff's deputy came to Deitch's apartment and arrested him, claiming that Deitch had threatened the State's Attorney's Office. *Id.* The Sheriff took Deitch for a psychological evaluation, which revealed no mental health issues. *Id.*

In 2020, a new tenant moved into an apartment across the hall from Deitch. *Id.* ¶ 17. Deitch believed her to be "borderline mentally impaired." *Id.* The new tenant repeatedly called the police on him because of "supposed girlfriends and live-in aide[s] making noise." *Id.* Deitch disputes the new tenant's account. On Deitch's account, the women visiting him were nurses who "were not noisy, and their visits generally lasted no more than 20 minutes." *Id.* Deitch became concerned

that the incidents were on his record, so he went to the rental office in person and Habitat chose not to take any action against him. *Id.* ¶ 18.

On or about February 23, 2022, Habitat employee Steffany Hardesty ("at the urging and request" of Brittany Hardesty, another Habitat employee) called the Sheriff and made a knowingly false report that Deitch was "building a bomb to kill law enforcement officers." *Id.* ¶ 19. The Hardestys "knew this statement was false at the time they made it" because they knew Habitat had recently been in Deitch's apartment and had seen no weapons or explosives and because they knew Deitch's physical disabilities would have prevented him from building a bomb in his apartment. *Id.* In fact, Deitch had lived at Indian River Apartments for "over eight years peacefully." *Id.* Deitch alleges the false report was made in retaliation for "the actions Deitch took holding them to the lease and the help he gave neighbors who did not [know] how to fight the landlord when they had an issue they could not resolve." *Id.* ¶ 20. The Habitat defendants' actions "were calculated to forcibly remove Deitch from his subsidized apartment . . . ." *Id.* ¶ 34.

The Sheriff, in response to the Hardestys' report, sent numerous deputies, a sniper, and dogs to surround Deitch's apartment and arrest him, which "terrorized Deitch." *Id.* ¶ 21. The Sheriff also arranged for a doctor at St. Mary's Hospital (operated by MedStar, *id.* ¶ 2) to conduct a psychological evaluation. *Id.* ¶ 22. Once his evaluation was completed, Deitch was discharged and told to go home, but when Deitch then stood outside his room in the emergency department, a nurse supervisor directed him to go back into his room. *Id.* ¶ 23. The nurse called the hospital guards to restrain Deitch. *Id.* "[S]ix guards stood in front of Deitch in a bowling pin formation," and one of the guards "charged [him] and the rest of the pack followed." *Id.* Deitch was pushed across the hall back into his room where they then threw his clothes to him and "escorted him out of the hospital and threatened [him] with the police if he did not leave the property." *Id.* ¶ 25.

Deitch believes the Sheriff told hospital staff that he was dangerous. *Id* ¶ 26. The incident caused "skeletal and muscle pain for almost 10 days," and his wrists were "deformed by the assaults." *Id.* ¶ 27.

On April 29, 2024, Deitch filed a six-count complaint raising the following claims: (1) intentional infliction of emotional distress against all defendants; (2) assault and battery against the Sheriff and Medstar; (3) a 42 U.S.C. § 1983 claim for violation of the First, Fourth, and Fourteenth Amendments against all defendants; (4) a violation of the Americans with Disabilities Act against all defendants, (5) a violation of the Fair Housing Act against the Habitat defendants, and (6) municipal liability and individual liability for violation of the common law and the Maryland constitution against the Sheriff. *See id.* ¶¶ 35–61. Deitch seeks compensatory and punitive damages, injunctive relief, and attorney's fees and costs. *Id.* at 12.

The Habitat defendants move to dismiss the claims against them. ECF 5. That motion is fully briefed. ECF 5-1, 8, & 9. No hearing is necessary. *See* Loc. R. 105.6.[1]

## II.   Standard of Review

Under Rule 12(b)(6), a party may seek dismissal for failure "to state a claim upon which relief can be granted." *Robertson v. Anderson Mill Elementary Sch.*, 989 F.3d 282, 290 (4th Cir. 2021) (quoting Fed. R. Civ. P. 12(b)(6)). To survive the challenge, the opposing party must have pleaded facts demonstrating it has a plausible right to relief from the Court. *Lokhova v. Halper*, 995 F.3d 134, 141 (4th Cir. 2021) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A plausible claim is more than merely conceivable or speculative. *See Holloway v. Maryland*, 32 F.4th 293,

---

[1] Deitch has not provided proof of service on the Sheriff and Medstar, and they have not responded to the complaint. Deitch shall be required to show good cause by March 24, 2025 why the claims against these defendants should not be dismissed without prejudice for failure to prosecute pursuant to Fed. R. Civ. P. 41(b).

299 (4th Cir. 2022). The allegations must show there is "more than a sheer possibility that a defendant has acted unlawfully." *Int'l Refugee Assistance Project v. Trump*, 961 F.3d 635, 648 (4th Cir. 2020) (quoting *Iqbal*, 556 U.S. at 678). But the claim does not need to be probable, and the pleader need not show "that alternative explanations are less likely" than their theory. *Jesus Christ is the Answer Ministries, Inc. v. Baltimore County*, 915 F.3d 256, 263 (4th Cir. 2019) (quoting *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015)).

When ruling on a Rule 12(b)(6) motion, the Court must accept the allegations as true and draw all reasonable inferences in favor of the pleader. *Williams v. Kincaid*, 45 F.4th 759, 765, 777 (4th Cir. 2022). But the Court does not accept "legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." *United States ex rel. Taylor v. Boyko*, 39 F.4th 177, 189 (4th Cir. 2022) (quoting *United States ex rel. Nathan v. Takeda Pharms. N. Am., Inc.*, 707 F.3d 451, 455 (4th Cir. 2013)). Merely reciting a claim's elements "and supporting them by conclusory statements does not meet the required standard." *Sheppard v. Visitors of Va. State Univ.*, 993 F.3d 230, 234 (4th Cir. 2021) (quoting *ACA Fin. Guar. Corp. v. City of Buena Vista*, 917 F.3d 206, 212 (4th Cir. 2019)). The Court "does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020) (quoting *Tobey v. Jones*, 706 F.3d 379, 387 (4th Cir. 2013)).

**III.   Discussion**

The Habitat defendants move to dismiss the claims against them: Count I (intentional infliction of emotional distress), Count III (§ 1983), Count IV (ADA), and Count V (FHA). The Court addresses each claim in turn.

### A. Intentional Infliction of Emotional Distress ("IIED")

To state a claim for IIED, a plaintiff must plead that the defendant engaged in conduct that was both "intentional or reckless" and "extreme and outrageous," that there is "a causal connection between the wrongful conduct and the emotional distress[,]" and that the emotional distress was "severe." *Lasater v. Guttmann*, 5 A.3d 79, 89 (Md. Ct. Spec. App. 2010) (quoting *Harris v. Jones*, 380 A.2d 611 (Md. 1977)). Stated slightly differently, a plaintiff must allege the defendant "desire[d] to inflict severe emotional distress" and knew that "such distress [was] certain, or substantially certain, to result from [its] conduct," or "the defendant act[ed] recklessly in deliberate disregard of a high degree of probability that the emotional distress [would] follow." *Haines v. Vogel*, 249 A.3d 151, 163 (Md. Ct. Spec. App. 2021) (quoting *Harris*, 380 A.2d at 614). To satisfy the "extreme and outrageous" requirement, the conduct "must be so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (quoting *Batson v. Shiflett*, 602 A.2d 1191, 1216 (Md. 1992)). Liability for this tort "should be imposed sparingly and 'its balm reserved for those wounds that are truly severe and incapable of healing themselves.'" *Id.* (quoting *Figueiredo-Torres v. Nickel*, 584 A.2d 69, 75 (Md. 1991), and noting, as of 2021, "[a] claim for IIED has been sustained in Maryland four times"). Courts have found cognizable IIED claims when an "HIV-positive surgeon operated on the appellants without their knowledge of his disease"; a "psychologist engaged in sexual relations with [the] plaintiff's wife during the time he was counseling the couple"; a "physician with herpes had sex with [a] nurse without informing her that he had the disease and infected her"; and a "workers' compensation insurer insisted that [the] claimant submit to psychiatric evaluation

for the 'sole purpose' of harassing her and forcing her to drop her claim or commit suicide." *Id.* at 163–64.

Deitch does not plausibly allege an IIED claim against the Habitat defendants. He does not even recite the elements of the claim. Deitch alleges the "Defendants acted intentionally by subjecting [him] to the vicious, violent [and] humiliating removal and arrest from his home." ECF 1, ¶ 36. He also alleges "[t]he deputies terrorized [him]." *Id.* ¶ 21. These allegations, even if true, suggest the Sheriff's deputies, not the Habitat defendants, committed these acts. And, no matter who committed the acts, the conduct is not extreme and outrageous such that it "go[es] beyond all possible bounds of decency." *See Haines*, 249 A.3d at 159. Nor is the alleged conduct "regarded as atrocious, and utterly intolerable in a civilized community." *See id.* at 163. What Deitch alleges the Habitat defendants did—submitting a false police report—is not "extreme and outrageous" under Maryland law. *See Lilly v. Balt. Police Dep't*, No. RDB-22-2752, 2023 WL 6216605, at *18 (D. Md. Sept. 25, 2023). Deitch also does not allege that any defendant, let alone the Habitat defendants, caused him severe emotional distress. At best, he alleges the Sheriff's deputies caused him physical injuries.

Deitch has not alleged an IIED claim against the Habitat defendants. Count I is dismissed as to the Habitat defendants with prejudice.

### B.  Section 1983

Two elements are essential to state a claim under § 1983: (1) plaintiff must have suffered a deprivation of "rights, privileges or immunities secured by the Constitution and laws" of the United States; and (2) the act or omission causing the deprivation must have been committed by a person acting under color of law. *West v. Atkins*, 487 U.S. 42, 48 (1988). Deitch concedes that he does not have a § 1983 claim against the Habitat defendants because they are not persons acting

under color of state law. *See* ECF 8, at 5. The § 1983 claims against the Habitat defendants are dismissed with prejudice.

### C. ADA

Deitch's ADA claim appears to fall under Title III of the ADA, which prohibits disability discrimination in places of public accommodation. *See J.D. ex rel. Doherty v. Colonial Williamsburg Found.*, 925 F.3d 663, 669–70 (4th Cir. 2019) (describing Title III of the ADA's applicability to places of public accommodation); *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 360 n.1 (2001) (explaining Title I of the ADA relates to employment discrimination and Title II relates to services, programs, or activities of public entities).

Title III prohibits discrimination against individuals "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). "To prevail under Title III of the ADA, a plaintiff must show that: (1) he is disabled within the meaning of the ADA; (2) the defendant owns, leases, or operates a place of public accommodation; and (3) the defendant discriminated against him because of his disability." *J.D. ex rel. Doherty*, 925 F.3d at 669–70.

Deitch has plausibly alleged he is disabled within the meaning of the ADA.

But Deitch has not alleged that Indian Bridge Apartments, the property that Habitat managed, is a place of public accommodation. The ADA defines "public accommodation" to include certain enumerated "private entities . . . if the operations of such entities affect commerce[.]" 42 U.S.C. § 12181(7). The statute enumerates 12 categories of establishments that are considered places of public accommodation, including: "an inn, hotel, motel, or other place of lodging, except for an establishment located within a building that contains not more than five

8

rooms for rent or hire and that is actually occupied by the proprietor of such establishment as the residence of such proprietor[.]" *Id.* A residential apartment complex does not fall into any of these groups. *See Indep. Hous. Srvs. of S.F. v. Fillmore Ctr. Assocs.*, 840 F. Supp. 1328, 1344 (N.D. Cal. 1993) ("[A]partments and condominiums do not constitute public accommodations within the meaning of the [ADA]."); *Lancaster v. Phillips Invs., LLC*, 482 F. Supp. 2d 1362, 1366 (M.D. Ala. 2007) ("Title III of the ADA does not apply to residential facilities."); *Want v. Shindle Props., LLC*, No. PWG-18-2833, 2018 WL 5392521, at *5 (D. Md. Oct. 29, 2018) (dismissing ADA claim against owner and manager of "private apartment complex").

Even if Deitch's residential apartment complex were a place of public accommodation, and even if Habitat, the property manager, could be liable for the apartment complex's ADA violation, Deitch does not allege that Habitat discriminated against him because of his disability. Whether a disabled plaintiff has been discriminated against by a place of public accommodation "'depends on [the] proper construction of the term discrimination' in the context of the case." *Nat'l Fed. of the Blind, Inc. v. Wal-Mart Assocs., Inc.*, 566 F. Supp 3d 383, 397 (D. Md. 2021) (quoting *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 681–82 (2001)). The statute sets forth a general prohibition on declining to provide goods, services, facilities, privileges, advantages, or accommodations on equal terms and in the most integrated setting possible to people with disabilities; using administrative methods that cause or perpetuate discrimination against people with disabilities; and discriminating against individuals associated with people with disabilities. 42 U.S.C. § 12182(b)(1). It also sets out specific prohibitions, which includes "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with

9

disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such" offerings. *Id.* § 12182(b)(2)(A)(ii).

Deitch alleges Habitat knew about his disability, but he does not allege that Habitat discriminated against him because of his disability. He does not claim he was denied services, facilities, privileges, or advantages because of his disability. Nor does he allege that Habitat did not accommodate his disability. On the contrary, the conduct that Deitch challenges is the making of a false report to police by the Hardesty sisters, Habitat's property managers. The reason they made the false report, according to Deitch, was not because of his disability. It was in retaliation for conduct unrelated to his disability. Deitch alleges the Hardesty sisters called the police on him "as an act of vengeance of the actions Deitch took holding them to the lease" and because he helped his neighbors "fight the landlord." ECF 1, ¶ 20. Even drawing all reasonable inferences in Deitch's favor, he does not allege discrimination because of disability.

The Title III claim against the Habitat defendants is dismissed with prejudice.

**D. FHA**

Deitch's FHA claims fails for two reasons: He has not plausibly stated a claim, and the claim is time-barred.

The FHA prohibits discrimination "against any person in the terms, conditions, or privileges of [the] sale or rental of a dwelling . . . because of a handicap of . . . that person." 42 U.S.C. § 3604(f)(2)(A).[2] To state an FHA claim, a plaintiff must plausibly allege that they had a handicap, that the defendant took an adverse action against them, and that the defendant did so

---

[2] Handicap is defined as "a physical or mental impairment which substantially limits one or more of such person's major life activities." 42 U.S.C. § 3602(h)(1). "The term 'handicap' in the FHA is treated as interchangeable with the term 'disability' in the ADA and Rehabilitation Act." *CMDS Resid., LLC v. Mayor & City Council of Balt.*, 714 F. Supp. 3d 583, 611 n.8 (D. Md. 2024).

"'because of' [their] handicap." *Thomas v. The Salvation Army of S. Territory*, 841 F.3d 632, 639 (4th Cir. 2016) (quoting § 3604(f)(2)(A)); *see also Reyes v. Waples Mobile Home Park Ltd. P'ship*, 903 F.3d 415, 421 (4th Cir. 2018); *Hunt v. Aimco Props., L.P.*, 814 F.3d 1213, 1222 (11th Cir. 2016) ("[A] complaint must allege that the adverse action was taken *because of* a disability and state the facts on which the plaintiff relies to support that claim."); *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 250 (9th Cir. 1997) (holding that the allegations in the complaint "should be judged by the statutory elements of an FHA claim"). An FHA plaintiff must allege a "sufficient nexus of causation" between his handicap and the defendant's actions to make the discrimination claim "plausible on its face." *Thomas*, 841 F.3d at 639 (quoting *Twombly*, 550 U.S. at 570).

Deitch has adequately pleaded that he is handicapped under the FHA and that the Hardesty sisters knew about his handicap. He also has pleaded that the Hardesty sisters took an adverse action against him: They "illegally remov[ed] [him]. . . from his apartment at the Indian Bridge Apartment Complex." ECF 1, ¶ 56.

Deitch has not adequately pleaded that the Hardesty sisters took the adverse action against him because of his handicap. As with his ADA claim, Deitch's own allegations negate any plausible inference of discrimination. On his account, the Hardesty sisters' false report that led to his eviction was made in retaliation for conduct unrelated to his handicap—it was "as an act of vengeance of the actions Deitch took holding them to the lease" and for helping his neighbors "fight the landlord." *Id.* ¶ 20. Even drawing all reasonable inferences in Deitch's favor, Deitch does not plausibly allege a "sufficient nexus of causation" between his handicap and the Hardesty sisters' actions. *See Thomas*, 841 F.3d at 639 (holding allegations insufficient to state an FHA claim when landlord "did not give [plaintiff] a reason for the denial of shelter, and nothing in [the plaintiff's] complaint suggests that the denial was because of her alleged . . . disability").

11

Deitch fails to state an FHA claim.

The FHA claim also fails because it is time-barred. A court may grant a 12(b)(6) motion on statute of limitations grounds "if the time bar is apparent on the face of the complaint." *Dean v. Pilgrim's Pride Corp.*, 395 F.3d 471, 474 (4th Cir. 2005). Claims under the FHA have a two-year statute of limitations. *See* 42 U.S.C. § 3613(a)(1)(A) ("An aggrieved person may commence a civil action . . . not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice . . . ."). FHA claims are civil rights claims. "A civil rights claim accrues when the plaintiff 'knows or has reason to know of the injury which is the basis of the action.'" *A Soc'y Without A Name v. Virginia*, 655 F.3d 342, 348 (4th Cir. 2011) (quoting *Cox v. Stanton*, 529 F.2d 47, 50 (4th Cir. 1975)). Deitch's FHA claim arises out of a discrete incident—the Hardesty sisters' alleged false report to the police. That allegedly false report occurred "[o]n or about February 23, 2022." ECF 1, ¶ 19. Thus, it is apparent on the face of the complaint that Deitch knew or had reason to know of his injury in February 2022. He did not file his complaint until April 29, 2024, more than two years later. The FHA claim is time-barred.

The FHA claim is dismissed with prejudice.

**E.  Dismissal With Prejudice**

Deitch has failed to state viable claims and the deficiencies in his allegations cannot be cured through further amendment. Dismissal with prejudice is warranted. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (stating courts need not provide opportunity to amend if amendment would be futile); *United States ex rel. Carson v. Manor Care, Inc.*, 851 F.3d 293, 305 n.6 (4th Cir. 2017) ("[W]hen a complaint is incurable through amendment, dismissal is properly rendered with prejudice and without leave to amend.").

**IV.     The Habitat Defendants' Request for Attorney's Fees and Costs**

The Habitat defendants request reasonable attorney's fees and costs under the FHA and the ADA. In an action brought under the FHA or the ADA, a court, in its discretion, may award the prevailing party reasonable attorney's fees and costs. 42 U.S.C. § 3613(c)(2); 42 U.S.C. § 12205. Under both statutes, "which draw on the same policies attending Title VII of the Civil Rights Act," courts apply the *Christiansburg* standard. *See Bryant Woods Inn, Inc. v. Howard County*, 124 F.3d 597, 606 (4th Cir. 1997) (discussing *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412 (1978), and applying it to the FHA). *Christiansburg* holds that prevailing defendants are to be awarded attorney's fees only when the plaintiff's underlying claim "was frivolous, unreasonable, or groundless, or . . . the plaintiff continued to litigate after it clearly became so." 434 U.S. at 422. The *Christiansburg* standard reflects Congress's "public policy objectives inherent in encouraging private plaintiffs to seek redress of [civil rights] violations, . . . when they have a reasonable basis on which to assert their claims." *Scoggins v. Lees Crossing Homeowners Ass'n*, 718 F.3d 262, 276 (4th Cir. 2013). The U.S. Court of Appeals for the Fourth Circuit has emphasized that "[w]hether to impose such sanctions is best left to the discretion of the district court." *Painter v. Harvey*, 863 F.2d 329, 334 (4th Cir. 1988).

In support of their request for fees, the Habitat defendants merely assert that Deitch's "FHA and ADA claims are frivolous, unreasonable, and without foundation," ECF 5-1, at 20, and cite only two cases, *Scoggins*, 718 F.3d at 275, and *Goldstein v. Costco Wholesale Corp.*, 337 F. Supp. 2d 771, 774 (E.D. Va. 2004). But *Scoggins* upheld the denial of attorney's fees in a civil rights case, and *Goldstein* is unpersuasive. In *Goldstein*, fees were awarded after a jury trial that resulted in a defense verdict, where the court found that the plaintiff, who was represented by counsel, "disregarded its pre-filing obligations of investigating the factual bases underlying its claim and

13

exhibited a deficient standard of professional conduct by allowing a disability rights claim to be filed unreasonably." 337 F. Supp. 2d at 773. At the pleading stage where the court must view the allegations in a light most favorable to the plaintiff, the Court finds that there was a "reasonable basis" for Deitch to raise claims against the Habitat defendants. *See Scoggins*, 718 F.3d at 276; *see also Christiansburg*, 434 U.S. at 422 ("Even when the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit."). The Habitat defendants' request for attorney's fees is denied.

## V.     Conclusion

Deitch has not plausibly stated claims against the Habitat defendants. Their motion to dismiss is granted. Counts I, III, IV, and V against the Habitat defendants are dismissed with prejudice.[3] A separate order follows.

Dated: <u>March 5, 2025</u>

                                                                                Deborah L. Boardman
                                                                                United States District Judge

---

[3] The Habitat defendants ask the Court to dismiss Count II, the assault and battery count. ECF 5-1, at 9. But none of the Habitat defendants is named as a defendant in the assault and battery count, only the Sheriff and MedStar are. ECF 1, ¶¶ 40–42. Deitch nevertheless argues that the Habitat defendants are liable for assault and battery because their acts caused the harmful and offensive touching of Deitch by the other defendants. *See* ECF 8, at 4–5. Deitch cannot amend his complaint through an opposition. *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013) ("It is well-established that parties cannot amend their complaints through briefing or oral advocacy."). Even if Deitch were to amend his complaint, he does not cite to any case law that supports this theory of liability for assault and battery.